**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:17-CV-00144-GNS-LLK**

KIMBERLY P. FITZGERALD                                                                                         PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                           DEFENDANT

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The Court referred the matter to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636. Plaintiff's Motion for Summary Judgment and Defendant's response in opposition are at Docket # 20 and 28. The matter is ripe for determination.

Plaintiff argues that the Administrative Law Judge (ALJ) erred in preferring the medical opinion of the testifying medical expert over that of her treating physician. Because the argument is unpersuasive, the RECOMMENDATION will be that the Court DENY Plaintiff's Motion for Summary Judgment and AFFIRM the Commissioner's final decision.

### Background facts and procedural history

Plaintiff applied for Social Security disability in January 2014, alleging that she became disabled on October 15, 2012. At the administrative hearing held in November 2015, Plaintiff explained that she was diagnosed with lupus and received Social Security disability in the 1990s for that condition. (Administrative Record (AR), p. 54). In the 2000s, she got better, got off disability, and returned to work as a special education teacher in the public schools. (AR, pp. 50, 51).

At the close of the hearing, the ALJ stated that she would obtain a medical expert to testify at a supplemental hearing. (AR, pp. 76-77). Plaintiff obtained a post-hearing opinion from her treating physician. (AR, pp. 728-31). In November 2015, treating physician Larry Mason completed the standard

1

physical assessment form. (AR, pp. 728-31). At the supplemental hearing in March 2016, Hugh Savage, M.D., testified as a medical expert. (AR, pp. 79-122). In April 2016, the ALJ issued her denial decision. (AR, pp. 30-38).

In her decision, the ALJ found that Plaintiff is not disabled because, although she can no longer perform her past relevant work, she retains the ability to perform a significant number of light jobs in the national economy. (AR, pp. 37-38). In finding that Plaintiff can perform light work, the ALJ gave "significant" weight to Dr. Savage's testimony and "little weight" to Dr. Mason's opinion. (AR, pp. 35, 36).

**Plaintiff's disability claim**

Although Plaintiff suffers from vocationally-significant lupus, fibromyalgia, diabetes, obesity, and degenerative disc disease of the lumbar spine (AR, p. 32), her disability claim is based primarily on her lupus. At the administrative hearing on November 12, 2015, Plaintiff explained that, by October 15, 2012, her lupus was resulting in excessive absenteeism at her job as special education teacher. (AR, pp. 57-58). On bad days, which occurred at unpredictable frequencies and lasted for unpredictable durations, the fatigue (lack of energy) confined her to bed. (*Id.*) "I could work … maybe two days one week and then the other three days I just could [not] get up and go." (AR, p. 59). "I might could work one day, but then I couldn't work again for three more weeks." (*Id.*). "[M]y kids needed routine and … it was hard on them because … you'd have a sub and the subs didn't know how to deal with the kids and that added extra stress and the more stress … the more fatigue." (*Id.*).[1]

---

[1] According to Plaintiff (Docket # 20-1, pp. 1-2): "To the extent that the ALJ's denial fails to mention the 11/12/2015 hearing [the oversight] is a typographical omission [and] this error would be harmless, but to the extent that the ALJ … failed to consider the testimony given at the 11/12/2015 hearing, and given the importance of consideration of Plaintiff's subjective complaints when properly evaluating disability of a claimant suffering from both lupus and fibromyalgia, a legitimate claim can be posited that the 4/21/16 denial is not supported by substantial evidence when it fails to consider the testimony taken on 11/12/2015 in its adjudication."

Plaintiff's suggestion (assertion) that the ALJ did not consider her testimony at the 11/12/2015 hearing lacks an evidentiary basis. Consistently with Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Evaluation Of Symptoms In Disability Claims) (which became effective in March 2016, the month after the ALJ's April 2016 decision, and superseded Soc. Sec. Rul. 96-7p, 1996 WL 374186), the ALJ did not explicitly make a finding regarding the credibility of Plaintiff's testimony. *See id.* at *1 ("we are eliminating the use of the term 'credibility'").

**Dr. Mason's opinion and Dr. Savage's testimony**

After the administrative hearing, Dr. Mason completed a check-box / fill-in-the-blank type form known as the Medical Assessment Of Ability To Do Work-Related Activities (Physical). Dr. Mason opined limitations that, if accepted, would preclude all work. Specifically, Dr. Mason opined that Plaintiff can sit for 3 hours (total) and stand/walk for 2 hours (total) during an 8-hour workday (AR, p. 729), which would not allow for any full-time work. Additionally, Dr. Mason opined that Plaintiff can lift/carry a maximum of 5 pounds occasionally, can "never" engage in postural activities (climb, balance, crouch, kneel, crawl), and is limited in her ability to push/pull. Each time the form asked Dr. Mason "[w]hat are the medical findings that support this assessment?" Dr. Mason responded "DDD of LB" (degenerative disc disease of the lower back). (AR, pp. 729, 730). Finally, Dr. Mason found that Plaintiff's asthma causes environmental restrictions (heights, moving machinery, temperature extremes, chemicals, dust, noise fumes, humidity, vibration). Significantly, Dr. Mason based the functional restrictions he assigned on raw diagnoses of degenerative disc disease of the lower back and asthma, with no mention of lupus, the impairment Plaintiff claims is the primary cause of her disability.

Dr. Savage testified that Plaintiff's degenerative disc disease of the lower back did not adequately support Dr. Mason's opinion of inability to complete an 8-hour workday. Dr. Savage referenced a lumbar spine x-ray (5 views) taken in May 2015 and interpreted by Donald Huff, M.D., as showing "facet arthropathy" and "mild lumbar degenerative changes with no acute findings." (Testimony at AR, p. 88 referencing interpretation at AR, p. 832). According to Dr. Savage, while this lower back impairment would be expected to limit Plaintiff to light work, it would not be totally work-prohibitive. (*Id.*) Dr. Savage testified that Dr. Mason's finding that Plaintiff is unable to sustain any work activity is inconsistent with the results of physical musculoskeletal exams, including Dr. Mason's own findings on November 11, 2015 (the same day he completed the assessment form) that "gait normal; no limb or joint pain with range of motion." (Testimony at AR, p. 90 referencing exams at AR, p. 782). Finally, Dr. Savage testified that that

Dr. Mason's finding that Plaintiff can "never" engage in postural activities (climb, balance, crouch, kneel, crawl) was "startling" (AR, p. 95) in light of Dr. Mason's own findings and Plaintiff's testimony that she can occasionally engage in postural activities such as bending (AR, p. 63) – rendering Dr. Mason's entire assessment suspect.

### The ALJ's decision

In determining that Plaintiff can perform light work, the ALJ gave "significant" weight to Dr. Savage's testimony and "little weight" to Dr. Mason's opinion, in part, because it "restricts claimant in ways not supported by the evidence." (AR, pp. 35, 36). Specifically, there is no objective medical evidence that Plaintiff is completely unable to engage in postural activities. (*Id.*) Additionally, according to the ALJ, Plaintiff "does not even appear to allege that she cannot perform these postural activities." (AR, p. 35 referencing Plaintiff's testimony at AR, p. 63 ("How about reaching/pulling/lifting/bending, that sort of thing? Yeah, I can do that occasionally, but not repetitively and not for long periods of time")).

### The rules for weighing medical opinions

Plaintiff's principal argument is that, in preferring the medical expert testimony that she can perform light work to her treating physician's opinion that she can perform no full-time work, the ALJ violated the rules for weighing medical opinions. Generally, an ALJ is required to accept the medical opinion of a treating source. "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).

If an ALJ declines to give a treating-source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *Gayheart*, 710 F.3d at 376. These factors include the length, nature and extent of the

4

treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii). In addition, the ALJ must consider how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, the medical specialty of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).

While opinions from non-examining medical experts are not assessed for "controlling weight," the ALJ must weigh such opinions based on the same factors for weighing treating-source opinions that are not given controlling weight, i.e., the factors at 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Gayheart*, 710 F.3d at 376. In other words, a treating physician's opinion that is not entitled to controlling weight is evaluated pursuant to the same factors used to assess any medical opinion.

**The ALJ did not err in preferring Dr. Savage's testimony to Dr. Mason's opinion.**

While an exception to the general rule, the ALJ did not err in this case in preferring the medical expert's (Dr. Savage's) testimony to that of the treating physician (Dr. Mason). This is because the ALJ identified substantial reasons for declining to give controlling weight to the treating physician's opinion, and the ALJ found that the medical expert's testimony is better supported in light of the factors at 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). (AR, pp. 35-36).

Plaintiff's disability claim is based primarily on her lupus, which Dr. Mason's assessment did not even mention. Dr. Mason assigned limitations based on Plaintiff's degenerative disc disease of the lower back.[2] In other words, they were based on a raw diagnosis, and, naturally, there are degrees of degenerative disc disease of the lower back – some more severe and limiting than others. "The mere diagnosis of [an impairment] ... says nothing about the severity of the condition." *Lee v. Comm'r*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Higgs v. Sec'y of Health and Human Servs.*, 880 F.2d 860, 863 (6th Cir. 1988)).

---

[2] Plaintiff does not challenge the ALJ's evaluation of the limitations Dr. Mason assigned based on her asthma.

5

The severity determination requires consideration of the underlying clinical findings. In this case, the x-ray of Plaintiff's lower back revealed only "mild lumbar degenerative changes with no acute findings" (AR, p. 832), physical exam revealed normal gain and range of motion (AR, p. 782), and Dr. Savage testified that the findings associated with Plaintiff's degenerative disc disease would limit her to light work but not be work-prohibitive (AR, p. 88). Dr. Mason's opinion, therefore, was not entitled to controlling weight as it was not well-supported by objective medical evidence and was inconsistent with other substantial evidence, i.e., Dr. Savage's opinion. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *3 (One "obvious inconsistency [that precludes entitlement to controlling weight is] when two medical sources provide inconsistent medical opinions about the same issue").

Plaintiff's reliance on Dr. Mason's opinion appears to be based on two false assumptions: first, that, when asked "[w]hat are the medical findings that support this assessment?" Dr. Mason's response was illegible; and second, that, because Dr. Mason treated Plaintiff for lupus, his assessment must have taken into account the effects of that impairment. Although Dr. Mason's handwriting is hard to read, once one realizes that his response was a common medical acronym, "DDD of LB" (degenerative disc disease of the lower back), it becomes legible and clear that Dr. Mason did not explicitly attribute any limitation to Plaintiff's lupus. (AR, pp. 729, 730). Additionally, there is no good reason to <u>assume</u> that Dr. Mason's assessment took into account the effects of Plaintiff's lupus. Plaintiff's claim is not that her lupus renders her unable to physically function on good days but that, on bad days, the fatigue renders her bedfast such that she cannot even attempt physical activity. Dr. Mason was asked to complete a general physical residual functional capacity (RFC) form, not to rate Plaintiff's likely frequency and duration of absenteeism from work due to symptoms and treatment. In contrast, Dr. Savage's testimony was tailored to the effects of Plaintiff's lupus and other impairments as a whole.

Having identified a substantial basis for declining to give Dr. Mason's opinion controlling weight, the ALJ properly weighed the opinions of Drs. Mason and Savage in light of the factors at 20 C.F.R. §§

404.1527(c)(2)-(6), 416.927(c)(2)-(6). (AR, pp. 35-36). These factors allowed the ALJ to prefer Dr. Savage's opinion.[3]

**Plaintiff's criticism of Dr. Savage's testimony is unpersuasive.**

Plaintiff's criticism of Dr. Savage's testimony appears to be based on the false assumption that certain inaudible portions of his testimony show that he lacked a substantial medical basis for diagnosing discoid (affecting the skin) as opposed to systemic or disseminated lupus (affecting other body systems).[4] While some of Dr. Savage's testimony concerning diagnosis is inaudible (AR, p. 101), he later explained that the diagnosis was due to minimal findings associated with the results of the tests of Plaintiff's blood, kidneys, and other organs and because her complaints of pain and forgetfulness are attributable to arthritis and fibromyalgia (AR, pp. 105-07).

In any event, even if Dr. Savage erred and Plaintiff has systemic lupus, the ALJ found that this would not change her finding that Plaintiff can perform a limited range of light work:

> With regard to claimant's lupus, the undersigned agrees with the medical expert that claimant's lupus does not appear to be "systemic." Even if it is, however, the moniker does not change the evidence that shows its impact on functioning to be noticeable, but not overwhelming. As discussed, claimant does have some genuine deficits. Treatment, however, has helped claimant and the overall record, including objective assessments, do not show the level of dysfunction alleged. As discussed, light work activities appear appropriate for claimant and the undersigned affirms this conclusion based upon a DDS [state-agency Disability Determination Service] assessment and the conclusions of a medical expert [Dr. Savage].

---

[3] Specifically, Factor (c)(3) (supportability) states that "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." Whereas Dr. Savage considered the effects of Plaintiff's impairments as a whole, Dr. Mason assigned disabled limitations based on minimal findings associated with degenerative disc disease of the lower back. Factor (c)(4) (consistency) states that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." Dr. Mason considered only Plaintiff's degenerative disc disease of the lower back. Factor (c)(4) (specialization) states that "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." Dr. Savage testified that he specialized in internal medicine and cardiology and that he is familiar with lupus and fibromyalgia because "[t]hat was in my internal medicine and we have rheumatology included in internal medicine." (AR, p. 85). Dr. Mason's specialty is general family medicine. *See* https://health.usnews.com/doctors/larry-mason-167967.

[4] According to Plaintiff's brief (Docket # 20-1, p. 4) (underlining and exclamation point original): "It is important to note, when medical expert asked to explain why his milder diagnosis of Plaintiff's lupus condition differs from the one that Plaintiff's treating doctors have used and treated for many years, his response is 'inaudible' at this critical point! [AR, p. 101]. A finding based on an 'inaudible' answer is not substantial evidence."

(AR, p. 36).

Regardless of the label placed on Plaintiff's lupus, Dr. Savage's testimony took into account all relevant clinical and diagnostic findings. Upon cross-examination, Dr. Savage conceded that "anything is possible" (AR, p. 107), including counsel's suggestion that perhaps the combination of Plaintiff's lupus and fibromyalgia would render her unable to sustain any work. The fact remains that Plaintiff (not Dr. Savage or the ALJ) bore "the burden of proving the existence and severity of limitations caused by her impairments." *Cruse v. Comm'r*, 502 F.3d 532, 540 (6th Cir. 2007) (quoting *Jones v. Comm'r*, 336 F.3d 469, 474 (6th Cir. 2003)); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled") and 404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity").

Although rheumatologist Sivalingam Kanagasegar, M.D., treated Plaintiff for lupus and fibromyalgia, there was no medical evidence concerning her limitations due to those impairments. Plaintiff relied primarily on Dr. Mason's opinion as satisfying her burden of proof, but that opinion was inadequate for the reasons identified above. "The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009). In the absence of proof to the contrary and in light of Dr. Savage's testimony, the ALJ acted within her "zone of choice" in determining that Plaintiff retains the ability to perform light work.

## RECOMMENDATION

The Magistrate Judge RECOMMENDS that the Court DENY Plaintiff's motion for summary judgment (Docket # 20), AFFIRM the Commissioner's final decision, and DISMISS Plaintiff's complaint.

August 16, 2018

**Lanny King, Magistrate Judge**
**United States District Court**

**NOTICE**

Under the provisions of 28 U.S.C. §§ 636(b)(l)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived.  *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).

August 16, 2018

**Lanny King, Magistrate Judge**
**United States District Court**